UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Ishi T.,[1] | ) | C/A No. 5:22-cv-658-KDW |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| vs. | ) | ORDER |
| | ) | |
| Kilolo Kijakazi, Acting Commissioner of | ) | |
| Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This social security matter is before the court pursuant to 28 U.S.C. § 636(c) and Local

Civil Rule 83.VII.02 (D.S.C.) for final adjudication, with the consent of the parties, of Plaintiff's

petition for judicial review. Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain

judicial review of a final decision the Commissioner of Social Security ("Commissioner"), denying

his claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI")

pursuant to the Social Security Act ("the Act"). Having carefully considered the parties'

submissions and the applicable law, the court reverses and remands the Commissioner's decision

for further action for the reasons discussed herein.

I.      Relevant Background

        A.      Procedural History

        This appeal concerns Plaintiff's August 13, 2018[2] applications for DIB and SSI benefits

under Title II and Title XVI of the Act, 42 U.S.C. §§ 401-433 in which he alleges a disability onset

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of
the United States has recommended that, due to significant privacy concerns in social security
cases, federal courts should refer to claimants only by their first names and last initials.

[2] Although the Application Summaries are dated October 26, 2018, Tr. 233-42, based on the
Disability Determination Transmittals, Plaintiff's protective filing date for both applications is
August 13, 2018, Tr. 72-73.

date of May 1, 2018. Tr. 233-42. Plaintiff's applications were denied initially on December 19, 2018, Tr. 72-73, and upon reconsideration on August 24, 2019, Tr. 102-03. On October 14, 2019 Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). Tr. 116-17. The administrative hearing was held on July 1, 2021 before ALJ Ronald Fleming. Tr. 31-55. On August 2, 2021, the ALJ issued an unfavorable decision, finding Plaintiff not disabled within the meaning of the Act. Tr. 12-24. On October 3, 2021, Plaintiff, through counsel, requested review of the ALJ's decision. Tr. 224-26. On January 3, 2022, the Appeals Council denied Plaintiff's request for review, Tr. 1-5. Thus, the ALJ's decision became the final decision of the Commissioner of Social Security. Tr. 1. Plaintiff brought this action seeking judicial review of the Commissioner's decision in a Complaint filed on March 2, 2022. ECF No. 1.

B.     Plaintiff's Background

Born in 1979, Plaintiff was 39 years old as of his alleged disability onset date of May 1, 2018. Tr. 249. In his October 26, 2018, Disability Report-Adult form Plaintiff indicated that he completed the 12th grade, did not attend special education classes, and had completed specialized job training or vocational school in May 1998 to become a certified barber. Tr. 254. Plaintiff listed his past relevant work ("PRW") as barber/barbershop owner from 1998 until May 2018. *Id.* Plaintiff indicated he stopped working on May 1, 2018, because of his conditions, which he listed as degenerative disc disease, limited mobility, back spasms, chronic neck and back pain, high blood pressure/hypertension. Tr. 253. Plaintiff indicated that he was 5'3" tall, weighed 150 pounds, and his conditions caused pain or other symptoms. *Id.*

In a Disability Report-Appeal dated February 25, 2019, Plaintiff indicated a change in his medical condition that occurred October 26, 2018. Tr. 269. Plaintiff noted his "condition has worsen[ed][,] no improvement[,] hands beginning to go without feelings[,] and legs, buttocks

continue to be painful." *Id.* He also indicated a new medical condition as of January 2019, noting he was "suffering from depression and other traumatic emotions." *Id.*

In a subsequent Disability Report-Appeal dated October 16, 2019, Plaintiff indicated a change in his medical condition as of August 2018 and indicated he was "[h]aving more neck pain as well as more pain in [his] legs." Tr. 294. He also noted that he was "beginning to fall due to . . . standing for long periods of time." *Id.*

C.    The Administrative Proceedings

Plaintiff appeared with counsel and testified at his administrative hearing on July 1, 2021 before ALJ Fleming in Columbia, South Carolina. Tr. 31. Vocational Expert ("VE") Renee Smith also appeared and testified. *Id.* Due to the Coronavirus pandemic, the hearing was conducted by video. Tr. 33. Plaintiff's counsel indicated that additional medical records were forthcoming, so the ALJ indicated he would hold the record open for ten days. Tr. 34.

1.    Plaintiff's Testimony

In response to questions from the ALJ Plaintiff stated he was 42 years old, 5'3" tall, weighted 181 pounds, was ambidextrous, separated from his wife, and had four adult children. Tr. 37-38. Plaintiff testified that he lived with his mother in her house. Tr. 38. Plaintiff stated that he had always worked as a barber, but because of his injury and pain he was working only one or two days a week. Tr. 38-39. Plaintiff testified that he last worked more than six months ago, and on a regular day he would make between $100.00 and $130.00. Tr. 39. Plaintiff stated that he did not receive food stamps and his mother paid all the bills. *Id.* He confirmed that he had a driver's license, and he drove "[a]bout three times a week give or take." Tr. 39-40. Plaintiff stated that he drove to his attorney's office for the hearing because his mother was not feeling well enough to drive him. Tr. 40. Plaintiff affirmed that he completed the twelfth grade, can read and write, could pay his bills if he had the money, and had been a barber his entire working career. *Id.* The ALJ

3

remarked that Plaintiff's earnings records indicated that he had not earned over $13,000.00 a year in any of the years from 2004 to 2019, and Plaintiff confirmed that was true. *Id.* Based on that information that ALJ found Plaintiff had no past relevant work. Tr. 41.

Plaintiff testified that he still has problems with his lower back and has "a ton of pain daily." Tr. 41. Plaintiff testified that he can barely do anything because he takes "so many different pills to try to relieve the pain. And they keep [him] really sleepy more than anything." *Id.* On a scale of one to ten, Plaintiff rated his usual pain at an eight. Tr. 41-42. Plaintiff testified that he takes Hydrocodone for his back and leg pain, and he also takes Gabapentin and Flexeril. Tr. 42. When asked about additional surgeries, Plaintiff testified that he was offered a spinal stimulator but because of Covid issues the doctor was having to reschedule appointments. Tr. 42-43. He also stated that he had more upcoming appointments with the doctor and Plaintiff assumed they would discuss whether surgery was indicated. Tr. 43. Plaintiff stated that his back "got bad over time" due to standing from barbering. *Id.* He testified that he went to the emergency room one night, and after an MRI they told him what was wrong with his back and he "ended up doing surgery from that point." *Id.* Plaintiff testified that his neck "bothers" him two or three days a week. *Id.* He rated that pain at "maybe a six or seven." Tr. 44. He stated that the Hydrocodone helped sometimes, but it makes him "more sleepy than anything." *Id.* Plaintiff stated that he goes to sleep but when he wakes up the pain is still there. *Id.* Plaintiff testified that surgeons have not recommended surgery on his neck. *Id.*

Plaintiff affirmed that he has been diagnosed with depression and is on medication. Tr. 44. When asked if the medication helped with his mood, Plaintiff responded "[n]ot really." *Id.* Plaintiff testified he had not seen a counselor in about a year, although previously he had seen a counselor three or four times a year. *Id.* Plaintiff stated he had never been hospitalized overnight for depression. Tr. 45. Plaintiff confirmed that he had surgery on his left index finger because of

trigger finger.[3] *Id.* He stated that he no longer has trigger finger, but he also does not have feeling in his left hand and has to "grab something extremely tight to make sure that it's there." *Id.* Plaintiff testified that he could sit or stand for 10-15 minutes before needing to reposition himself. *Id.* He stated he could not walk far because his back "tightens up" but he indicated he could walk for 10-15 minutes. Tr. 46. Plaintiff stated that he has not attempted to lift anything since his back surgery. *Id.* He stated that if he dropped something on the floor he could not bend over to pick it up, he would have to move his legs, "slide it over and then kind of squat in that way." *Id.* Plaintiff testified that he has not tried to kneel on one knee or do anything that requires him to constantly bend or bend over. *Id.* Plaintiff stated that he could squat down "but it's a lot of pain with it." *Id.* He stated he could not crawl across a floor. Tr. 46-47. Plaintiff testified that he sometimes needs help getting out of bed because he wakes up "really stiff." Tr. 47. Plaintiff stated he is able to dress himself, but he does not do household chores or go grocery shopping. *Id.* Plaintiff stated that he has not been out lately because he does not want to get Covid. Tr. 48. Plaintiff testified that on a typical day, after taking his medication, he sits around, naps, and watches TV. *Id.*

In response to questions from his counsel Plaintiff confirmed that sitting and standing are the main things that affect his back and causes back pain flare ups. Tr. 48. Plaintiff stated that he is most comfortable lying on his side for a period of time, but he has to keep repositioning himself. *Id.* He stated that he spends "most of the day" in that position. Tr. 49. He stated that if he is reclining it is a little less painful. *Id.* Plaintiff testified that when he attempted to work sporadically, he was

---

[3] "Trigger finger is a condition affecting tendons that flex the fingers and thumb, typically resulting in a sensation of locking or catching when you bend and straighten your digits. Other symptoms may include pain and stiffness in the fingers and thumb. The condition is also known as stenosing tenosynovitis." *See* https://orthoinfo.aaos.org/en/diseases--conditions/trigger-finger/ (last visited May 30, 2023).

able to work "[m]aybe three" hours. *Id.* He affirmed that he still has his barber's license. *Id.* Plaintiff affirmed that his children were now over 18 years old, but a year ago when they were involved in school sports, he was able to attend their games. Tr. 50. He testified that the games lasted "less than an hour or so . . . give or take." *Id.* Plaintiff testified that he rarely has a good night's sleep because he is "just tossing and turning every night." *Id.* Plaintiff stated that he was still interested in discussing with doctors the spinal stimulator, including the financial part of it. Tr. 51.

## 2.    VE Testimony

The ALJ found Plaintiff had "no past relevant work because nothing was done at SGA levels." Tr. 52. The ALJ asked the VE to assume a hypothetical individual of Plaintiff's age, education, and past job experience, "limited to light work with frequent climbing of ramps and stairs. No climbing of ladders, ropes, or scaffolds. Frequent balancing. Occasional stooping. No kneeling, crouching, or crawling." Tr. 53. The VE affirmed there would be work available and provided the following examples: marker, Dictionary of Occupational Titles ("DOT") number 209.587-034, light, unskilled, SVP:2, approximately 250,000 nationally; garment sorter, DOT number 222.687-014, light, unskilled, SVP:2, approximately 50,000 nationally; and mail sorter, DOT number 222.687-022, light, unskilled, SVP:2, with approximately 140,000 nationally. *Id.*

The ALJ's second hypothetical was the same as the first, except the individual would be limited to sedentary work. *Id.* The VE identified the following examples of employment: spotter, DOT number 739.687-182, sedentary, unskilled, SVP:2, approximately 125,000 nationally; bench worker, DOT number 700.687-026, sedentary, unskilled, SVP:2, approximately 80,000 nationally; and lens inserter, DOT number 713.687-026, sedentary, unskilled, SVP:2, approximately 55,000 nationally. Tr. 53-54.

For his final hypothetical, the ALJ added to the second hypothetical that "due to symptomology the hypothetical individual would be off task 20 percent of the workday and would miss three days' work per month." Tr. 54. The VE testified there would be no work this individual could perform. *Id.*

In response to Plaintiff's attorney, the VE clarified that on the third hypothetical, the limitations would separately be work preclusive. Tr. 54. Counsel had no other questions. *Id.*

The ALJ asked the VE if her testimony was consistent with the DOT, and she testified it was consistent but noted that for anything not specifically addressed in the DOT, she relied on her "training, education, and experience in the field. Specifically, off task behavior and absences are not directly addressed in the DOT." Tr. 54.

There being no further questions, the hearing closed. Tr. 55.

II.    Discussion

A.    The ALJ's Findings

In his August 2, 2021 decision, the ALJ made the following findings of fact and conclusions of law:

1.    The claimant meets the insured status requirements of the Social Security Act through June 30, 2020.

2.    The claimant has not engaged in substantial gainful activity since May 1, 2018, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3.    The claimant has the following severe impairment: L5-S1 laminectomy and fusion secondary to degenerative disc disease (20 CFR 404.1520(c) and 416.920(c)).

4.    The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5.    After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work

as defined in 20 CFR 404.1567(a) and 416.967(a) except he can frequently balance and climb ramps and stairs, and occasionally stoop, but no kneeling, crouching, crawling, or climbing of ladders, ropes or scaffolds.

6.    The claimant has no past relevant work (20 CFR 404.1565 and 416.965).

7.    The claimant was born on [REDACTED] 1979 and was 39 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8.    The claimant has at least a high school education (20 CFR 404.1564 and 416.964).

9.    Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 404.1568 and 416.968).

10.   Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11.   The claimant has not been under a disability, as defined in the Social Security Act, from May 1, 2018, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

Tr. 18-20, 22-23.

    B.    Legal Framework

        1.    The Commissioner's Determination-of-Disability Process

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are "under a disability," defined as:

inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]

42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A).

    To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of disability to a series of five

8

sequential questions. *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 461 n.2 (1983) (discussing considerations and noting "need for efficiency" in considering disability claims).  An examiner must consider the following:  (1) whether the claimant is working; (2) whether the claimant has a severe impairment; (3) whether that impairment meets or equals an impairment included in the Listings;[4] (4) whether such impairment prevents claimant from performing PRW; and (5) whether the impairment prevents the claimant from performing specific jobs that exist in significant numbers in the national economy. *See* 20 C.F.R. § 404.1520, § 416.920. These considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis. If a decision regarding disability may be made at any step, no further inquiry is necessary. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) (providing that if Commissioner can find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step).

A claimant is not disabled within the meaning of the Act if the claimant can return to PRW as it is customarily performed in the economy or as the claimant actually performed the work. *See* 20 C.F.R. Subpart P, § 404.1520(a), (b), § 416.920 (a), (b); Social Security Ruling ("SSR") 82–62 (1982). The claimant bears the burden of establishing the inability to work within the meaning of the Act.  42 U.S.C. § 423(d)(5).

---

[4] The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed impairments") the Agency considers disabling without the need to assess whether there are any jobs a claimant could do. The Agency considers the Listed impairments, found at 20 C.F.R. part 404, subpart P, Appendix 1, severe enough to prevent all gainful activity. 20 C.F.R. § 404.1525. If the medical evidence shows a claimant meets or equals all criteria of any of the Listed impairments for at least one year, he will be found disabled without further assessment. 20 C.F.R. § 404.1520(a)(4)(iii), § 416.920(a)(4)(iii). To meet or equal one of these Listings, the claimant must establish that his impairments match several specific criteria or be "at least equal in severity and duration to [those] criteria." 20 C.F.R. § 404.1526, § 416.926; *Sullivan v. Zebley*, 493 U.S. 521, 530-31 (1990); *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (noting the burden is on claimant to establish his impairment is disabling at Step 3).

Once an individual has made a prima facie showing of disability by establishing the inability to return to PRW, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy. To satisfy that burden, the Commissioner may obtain testimony from a VE demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments that prevent the return to PRW. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the Commissioner satisfies that burden, the claimant must then establish the inability to perform other work. *Hall v. Harris*, 658 F.2d 260, 264–65 (4th Cir. 1981)*; see generally Bowen*, 482 U.S. at 146 n.5 (regarding burdens of proof).

2.     The Court's Standard of Review

The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner made after a hearing to which he was a party." 42 U.S.C. § 405(g). The scope of that federal court review is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case. *See id.*, *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Walls*, 296 F.3d at 290 (citing *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

The court's function is not to "try these cases de novo or resolve mere conflicts in the evidence." *Vitek v. Finch*, 438 F.2d 1157, 1157–58 (4th Cir. 1971); *see Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (*citing Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence. "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 390, 401; *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005); *see also Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (explaining that,

"whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high," as it means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion"). Thus, the court must carefully scrutinize the entire record to assure there is a sound foundation for the Commissioner's findings, and that the Commissioner's conclusion is rational. *See Vitek*, 438 F.2d at 1157–58; *see also Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed "even should the court disagree with such decision." *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

C.     Analysis

Plaintiff alleges the ALJ erred by (1) dismissing trigger finger/hand impairments and depression as non-severe impairments; (2) failing to explain his findings regarding Plaintiff's residual functional capacity ("RFC"); and  (3) failing to properly evaluate Plaintiff's subjective symptomology. Pl. Br., ECF No. 15.

1.     Step Two Analysis: Severe Impairments

At Step Two of the sequential evaluation process, the ALJ found Plaintiff had the severe impairment of L5-S1 laminectomy and fusion secondary to degenerative disc disease. Tr. 18. The ALJ found several other medically determinable impairments—including allergic rhinitis, hypertension, hyperlipidemia, left hand A1 pulley of the long finger with triggering, and depression—but found them to be non-severe because these impairments did not cause more than a minimal effect on Plaintiff's ability to perform basic work activities. *Id.*

Plaintiff argues that by failing to evaluate his trigger finger/hand impairments and depression and the impact on work-related duties, the ALJ's RFC findings are incomplete and deficient. Pl.'s Br. 16. Plaintiff cites to treatment notes indicating reports of depressive symptoms and treatment with medication. *Id.* at 17. Plaintiff argues that his "depression symptoms, especially

when considered in conjunction with his physical limitations, could reasonably be expected to interfere with his ability to perform work-related activities." *Id.* He also contends that drowsiness caused by depression medications could interfere with his ability to concentrate, persist, and maintain pace. *Id.* at 17-18. Plaintiff also argues that the ALJ made no accommodations in his RFC assessment for Plaintiff's difficulty gripping with his left hand after undergoing release surgery. *Id.* at 18-19.

The Commissioner argues that "[b]ecause Plaintiff failed to prove that his trigger finger caused a significant limitation in his ability to perform basic work activities, substantial evidence supports the ALJ's finding that his condition was non-severe." Def.'s Br., ECF No. 17 at 11. The Commissioner also asserts that "substantial evidence supports the ALJ's finding that Plaintiff's depression was non-severe as it caused at most mild limitations (Tr. 18-19)." *Id.* The Commissioner further notes that "the jobs identified by the VE require only frequent fingering and are unskilled. There is no evidence to support Plaintiff's contention that he requires a more restrictive limitation on fingering or any additional mental impairment in his RFC." *Id.* at 12.

Step Two is a threshold determination of whether a claimant has a severe impairment (or combination of impairments) that meets the twelve-month duration requirement and significantly limits the claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). A severe impairment "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [a claimant's] statement of symptoms[.]" 20 C.F.R. §§ 404.1508,

416.908. It is the claimant's burden to prove that he suffers from a medically severe impairment. *Bowen v. Yuckert*, 482 U.S. at 146 n.5.

In assessing the severity of Plaintiff's trigger finger/hand impairment, the ALJ cited to medical records including x-rays and Plaintiff's March 2021 surgical procedure. Tr. 18. In assessing the severity of Plaintiff's depression, the ALJ determined that Plaintiff had mild limitation in all of the four Paragraph B mental functional areas of understanding, remembering and applying information; interacting with others; concentrating, persisting or maintaining pace; and adapting or managing oneself. Tr. 18-19. As support for this determination, the ALJ cited to the psychological examination by Dr. Way[5], as well as notes within medical records. *Id.* In formulating his RFC assessment the ALJ considered Plaintiff's hearing testimony, the medical evidence of record, and the opinion of psychological consultant, Dr. Way. Tr. 20-22.

The court finds that the ALJ's failure to list trigger finger/hand impairments and depression as severe impairments may be considered harmless error. "As long as a claim is not denied at step two, it is generally unnecessary for the ALJ to have specifically found any additional alleged impairment to be severe." *Bryant v. Comm'r, Soc. Sec. Admin.*, No. 2:15-CV-4786-RMG-MGB, 2017 WL 394500, at *9 (D.S.C. Jan. 10, 2017), *report and recommendation adopted sub nom. Bryant v. Colvin*, No. CV 2:15-4786-RMG, 2017 WL 384302 (D.S.C. Jan. 25, 2017)). *See also Martinez v. Astrue*, No. CA 1:11-850-CMC-SVH, 2012 WL 3580675, at *10 (D.S.C. July 30, 2012), *report and recommendation adopted*, No. CA 1:11-850-CMC-SVH, 2012 WL 3582799 (D.S.C. Aug. 17, 2012) ("A finding of a single severe impairment at step two of the sequential evaluation is enough to ensure that the factfinder will progress to step three."). In other words, "[a]s long at the ALJ determines that the claimant has at least one severe impairment and proceeds

---

[5] James H. Way, Ph.D., conducted a Mental Status Evaluation of Plaintiff on August 1, 2019 as part of the disability determination process. Tr. 397-400.

to discuss all of the medical evidence, any error regarding failure to list a specific impairment as severe at step two is harmless." *McClain v. Colvin*, No. 1:12CV1374, 2014 WL 2167832, at *4 (M.D.N.C. May 23, 2014) (citations omitted). The court dismisses this allegation of error.

> 2.    The ALJ's RFC Assessment and Consideration of Plaintiff's Subjective Statements[6]

Plaintiff's next allegation of error relates to the ALJ's RFC assessment. The ALJ found Plaintiff had the RFC to perform jobs at the sedentary exertional level with the following limitations: frequently balancing and climbing of stairs and ramps; occasional stooping, but no kneeling, crouching, crawling, or climbing of ladders, ropes, or scaffolds. Tr. 19-20. Plaintiff submits this RFC did not account for the severity of his back pain or issues he has with sitting. Pl.'s Br. 22. Plaintiff argues that "[d]espite ample record evidence detailing [Plaintiff's] significant problems sitting, the ALJ limited him to sedentary work with no restrictions on the length of time he would be required to sit and no provision for a sit/stand option or other accommodation (Tr. 19-20)." *Id.* at 24.

The Commissioner submits Plaintiff's RFC is supported by substantial evidence and "the ALJ specifically discussed Plaintiff's functional limitations (Tr. 22)." Def.'s Br. 14. The Commissioner argues the ALJ did not overlook any relevant functions and the ALJ's finding on sitting "is traceable from the ALJ's decision which includes consideration of Plaintiff's sitting allegations and the state agency physicians' prior administrative medical findings which expressly state that Plaintiff could sit for six hours (Tr. 19-22, 41,45, 48, 61, 83)." *Id.* at 14-15.

In his decision, the ALJ must build a "logical bridge" from the evidence to his conclusion. *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016). The ALJ must consider all of Plaintiff's

---

[6] Because Plaintiff's arguments regarding the ALJ's analysis of his RFC and his subjective statements are intertwined, the court will consider them together.

physical and mental impairments to determine how they affect his ability to work. *Id.* at 188. An RFC assessment is a determination of an individual's ability to perform sustained work-related activities on a regular and continuing basis. SSR 96-8p, 1996 WL 374184 at *1. "RFC is not the *least* an individual can do despite his or her limitations or restrictions, but the *most*." *Id.* (emphasis in original). At the administrative hearing level, the ALJ is responsible for assessing a claimant's RFC. 20 C.F.R. §§ 404.1546, 416.946. An ALJ's RFC assessment should be based on all relevant evidence and will consider the claimant's ability to meet the physical, mental, sensory, and other requirements of work. 20 C.F.R. §§ 404.1545(a)(3) and (4), 416.945(a)(3) and (4). Social Security Ruling 96-8p requires that the RFC assessment "include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and non-medical evidence (e.g., daily activities, observations)." SSR 96-8p, 1996 WL 374184 at *7. The ALJ must discuss the claimant's ability to "perform sustained work activities in an ordinary work setting" on a regular work schedule. *Id.* Further, "[t]he RFC assessment must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence." *Id.* The RFC must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts such as laboratory findings and non-medical evidence like daily activities and observations. *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015).

In determining that Plaintiff had the RFC to perform sedentary work with certain additional limitations, the ALJ stated that in making his RFC determination, he "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and 416.929

and SSR 16-3p."[7] Tr. 20. The ALJ then discussed Plaintiff's hearing testimony, the medical evidence, including the medical source opinions of state agency examiners and a psychological evaluation.[8] Tr. 20-22. The ALJ's recitation of Plaintiff's testimony regarding his functional ability and activities of daily living ("ADLs") included the following:

- Plaintiff attempted to work six months prior to the hearing as a barber making $100 to $130 a day a couple of days a week.
- He has a driver's license and drives three times a week. He drove to his lawyer's office the day of the hearing.
- He has lower back pain that is an 8 on a 10-point scale.
- He takes hydrocodone for pain. It makes him sleepy.
- His neck hurts two to three days per week.
- He takes medication for depression that also makes him sleepy. He does not see anyone for his depression and has no hospitalizations.
- His left index finger is not triggering anymore.
- He does not cook, and does not do dishes, floors, or laundry.
- He just sits and watches TV.
- He cannot stand, walk, or sit more than 10 to 15 minutes at a time.

Tr. 20.

The ALJ indicated he found Plaintiff's medically determinable impairments could cause the alleged symptoms but found Plaintiff's statements concerning the "intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]" *Id.* The ALJ then cited to medical records and summarized Plaintiff's relevant medical history, including the following related to his back impairment:

- Plaintiff underwent L5-S1 posterior lumbar interbody fusion with screws on September 17, 2018 (citing ex. 1F/10).
- Post-surgical imaging in October 2018 found hardware and graft in good position (citing ex. 1F/5).
- Plaintiff underwent physical therapy where he reported improvement in his leg symptoms

---

[7] SSR 16-3p provides a two-step process for evaluating an individual's symptoms. First, the ALJ must determine whether the individual has a medically determinable impairment "that could reasonably be expected to produce the individual's alleged symptoms." SSR 16-3p, 2017 WL 5180304, at *3. Then the ALJ must "evaluate the intensity and persistence of an individual's symptoms such as pain and determine the extent to which an individual's symptoms limit his or her ability to perform work-related activities . . . ." *Id.* at *4.

[8] The record contains no treating physician opinion regarding Plaintiff's physical condition.

but continued to have left calf pain and foot pain (citing ex. 2F/[3]).

- March 2019 lumbar CT revealed postoperative changes from the fusion. Plaintiff reported neck pain and no improvement in his back pain despite the use of Mobic, Gabapentin, and Flexeril. Examination found tenderness to palpation of lower spine, normal sensory and motor function (citing ex. 4F/1, 3).
- In August 2019 Plaintiff sought a second opinion regarding back pain. He endorsed radiating pain down the posterior aspect of his lower extremities with both sitting and standing, swelling in his feet bilaterally, and difficulty working as a barber due to shooting pain in his hands. Exam found him in no acute distress, antalgic gait favoring the right side, decreased range of motion of the lumbar and cervical spine (citing ex. 7F/5-8).
- Plaintiff was referred for pain management and a spinal cord stimulator was suggested (citing ex. 8F/3).
- January 2021 pain management records indicate continued complaints of neck pain, left hand pain, and low back pain, but denied any weakness (citing ex. 9F/1). Objective findings of the cervical spine included mild muscle spasms, stiffness, mild tenderness to palpation, and near full range of motion with mild pain. Findings of the lumbar spine included muscle spasms, stiffness, and decreased range of motion with increased pain. Norco injections were prescribed (citing ex. 9F/3, 5, 7).
- May 2021 Plaintiff declined the spinal stimulator and was taking Flexeril, Gabapentin, and Meloxicam for pain. Physical exam found no neurological deficits and normal range of motion (citing ex. [10F]/7-9).

Tr. 20-21.

The ALJ then stated the following regarding Plaintiff's statements about his symptoms:

Although the claimant's statements about the intensity, persistence, and limiting effects of his symptoms, are somewhat consistent with the medical record in that examinations note some decreased range of motion and decreased sensation. However, he generally denies any weakness, his motor strength remains intact, and although an antalgic gait is noted, he does not require an assistive device for ambulation (Ex. 1F/7-8, 4F/3, 7F/5-8, 9F/1). Likewise, imaging consistently shows patent central canal at the L5-S1 surgical level with no evidence of new disc extrusion or central stenosis (Ex. 7F/21). The overall record simply does not substantiate disabling impairments as alleged by the claimant.

Tr. 21.

The ALJ then reviewed the opinions of the State agency medical consultants. *Id.* Without any real discussion of what their opinions included, the ALJ determined their opinions that Plaintiff could perform light work were "unpersuasive" because they were "inconsistent with the evidence of record that shows the claimant continues to have pain and decreased range of motion post lumbar surgery." *Id.* (referencing opinions of State agency consultants, rendered in conjunction

17

with initial disability determinations dated December 19, 2018, Tr. 56-71, and reconsidered disability determinations dated May 25, 2019, Tr. 74-101). The ALJ found this evidence more indicative of sedentary work. *Id.*

The ALJ considered the lay opinion of Plaintiff's sister but "did not provide articulation about this evidence, as it is inherently neither valuable nor persuasive." Tr. 22. The ALJ also considered the Mental Status Evaluation of Dr. Way opining that Plaintiff is "*intellectually* capable of completing self-care tasks and basic instrumental activities of daily living independently." *Id.* (emphasis added). The ALJ found this opinion persuasive. However, although the ALJ discussed the mental aspects of this opinion, he did not comment on Dr. Way's observations of Plaintiff's physical condition.

The ALJ concluded his RFC assessment by finding Plaintiff has the RFC for sedentary work and found the RFC "is consistent with the diagnostic and clinical findings of record, and adequately addresses the location, duration, frequency, and intensity of the claimant's symptoms and precipitating and aggravating factors." *Id.*

Plaintiff argues that the ALJ did not properly account for the severity of his back pain nor did he evaluate Plaintiff's difficulty with sitting. Pl.'s Br. 22. The Commissioner contends that the ALJ's finding on sitting is "traceable" from the decision which includes consideration of Plaintiff's sitting allegations and the opinions of the State agency physicians stating he could sit for six hours. Def.'s Br. 14-15. As to Plaintiff's back pain, the Commissioner asserts the ALJ carefully considered the objective medical evidence and Plaintiff's treatment history. *Id.* at 16. The Commissioner argues the "ALJ gave Plaintiff considerable benefit of the doubt in assessing his [RFC] by limiting him to sedentary work, the least physically exertional type of work, with additional postural limitations to 'further avoid exacerbation of his symptoms and any weakness [or] deficits associated with them' (Tr. 22)." *Id.* at 17.

It is well-settled that an ALJ "'must build an accurate and logical bridge from the evidence to his conclusion.'" *Monroe v. Colvin*, 826 F.3d at 189. Here, the court finds the ALJ's bridge a little wobbly. The ALJ limited Plaintiff to sedentary work, but he did not address any limitations regarding Plaintiff's ability—or inability—to sit for extended periods. SSR 96-9p provides:

> In order to perform a full range of sedentary work, an individual must be able to remain in a seated position for approximately 6 hours of an 8-hour workday, with a morning break, a lunch period, and an afternoon break at approximately 2-hour intervals. If an individual is unable to sit for a total of 6 hours in an 8-hour work day, the unskilled sedentary occupational base will be eroded. The extent of the limitation should be considered in determining whether the individual has the ability to make an adjustment to other work.

1996 WL 374185 at *6. While the ALJ may have determined Plaintiff capable of meeting this requirement, given Plaintiff's testimony and the evidence of record, further discussion by the ALJ is warranted.

As outlined above, the ALJ cites to several medical records that endorsed Plaintiff's back pain and his treatment with pain management specialists. However, the court notes that the ALJ did not include all of the medical findings in the records he cited. For example, the ALJ cites to an August 2019 record that notes "decreased range of motion of the lumbar and cervical spine[.]" *Id.* (citing ex. 7F/5-8). The record actually indicates, "**Severely decreased range of motion**" for both active and passive motion of the lumbar spine. Tr. 413 (Exhibit 7F/6) (emphasis in original). The ALJ cites to a May 2021 record that "show[s] the claimant declined the spinal stimulator[.]" Tr. 21 (citing ex. 10F/8-9[9]). This same record notes that the next step in pain management "was spinal stimulator but [patient] did not want to proceed *due to financial reasons*." Tr. 454 (Exhibit 10F/7) (emphasis added). The court recognizes that the ALJ cited to Dr. Way's opinion as it related to Plaintiff's mental functioning and his conclusions regarding Plaintiff's ability complete or learn

---

[9] The decision cites Exhibit 1F for the May 2021 records. However this appears to be a scrivener's error. The actual record is found at Exhibit 10F.

certain tasks from an "intellectual" standpoint. Tr. 22. But notably, Dr. Way also observed that Plaintiff "ambulated independently, although slowly, with a limp, and with apparent discomfort. He appeared to be uncomfortable while seated. He stood at times during the session." Tr. 399. In his Clinical Functional Evaluation Dr. Way also noted Plaintiff's reports of being unable to complete tasks because of pain and impairments in his concentration secondary to pain. *Id.* Dr. Way noted that Plaintiff's "short-term memory was impaired during today's session. He appeared to be physically uncomfortable during today's session." Tr. 399-400.

In discussing the intensity, persistence, and limiting effects of Plaintiff's symptoms, the ALJ does not mention Plaintiff's pain. Instead he determined that Plaintiff's statements "are somewhat consistent with the medical record in that examinations note some decreased range of motion and decreased sensation." Tr. 21. Because Plaintiff generally denied weakness or declining motor strength, did not require an assistive device, and imaging showed no evidence of *new* disc extrusion or stenosis, the ALJ determined that the record "does not substantiate disabling impairments as alleged by the claimant." *Id.* The ALJ summarized his RFC findings by stating his RFC was "consistent with the diagnostic and clinical findings of record, and adequately addresses the location, duration, frequency, and intensity of the claimant's symptoms and precipitating and aggravating factors." Tr. 22. This analysis does not explain how or if the ALJ considered Plaintiff's subjective statements of pain in determining his RFC—especially given the records cited by Plaintiff that detail Plaintiff's problems of pain with prolonged sitting and his testimony of the same. The Commissioner's argument that the ALJ's finding on sitting is "traceable" from the ALJ's decision is insufficient. SSR 96-8p provides that in cases where pain is alleged, the RFC assessment must "[s]et forth a logical explanation of the effects of the symptoms, including pain, on the individual's ability to work." 1996 WL 374184 at *7.

A recent Fourth Circuit Court of Appeals case, decided after this case was filed, addresses

evaluation of a claimant's subjective complaints. In *Shelley C. v. Comm'r of Soc. Sec. Admin.*, 61 F.4th 341, 360 (4th Cir. 2023), the court noted that "'because pain is subjective [it] cannot always be confirmed by objective indicia[.]'" *Id.* (quoting *Craig v. Chater*, 76 F.3d 585, 595 (4th Cir. 1996)). The Fourth Circuit held that the claimant "was entitled to rely entirely on subjective evidence to demonstrate that her pain was sufficiently persistent and severe to support a disability finding" and noted that the record contained "no shortage of such evidence." *Shelley C.*, 61 F.4th at 360-61. The Fourth Circuit also noted that the plaintiff's "statements were also directly corroborated by her testimony at the ALJ hearing." *Shelley C.*, 61 F.4th at 361. In an even more recently published decision, the Fourth Circuit again addressed an ALJ's consideration of a claimant's subjective complaints. In *Oakes v. Kijakazi*, the plaintiff applied for disability benefits and complained that "pain regularly shoots from his lower back down his legs, preventing him from either standing or sitting for too long. At times, it causes weakness in his legs. Due to this pain, he spends a typical day watching television in his recliner, occasionally attempting to perform chores 'with breaks.'" *Oakes v. Kijakazi*, No. 21-2421, 2023 WL 3857494, at *1 (4th Cir. June 7, 2023). After an administrative hearing the ALJ denied benefits, then the Appeals Council denied Oakes's request for review, and after filing an action in district court, the district court affirmed the final decision of the Commissioner. *Id.* at *2. Oakes appealed the decision contending, among other allegations, that the ALJ failed to properly consider his subjective complaints. *Id.* The Fourth Circuit agreed finding that "the ALJ failed to adequately consider the intensity and persistence of Oakes's pain." *Oakes v. Kijakazi*, 2023 WL 3857494, at *5. The court found that "the ALJ never addressed the fact that disability benefits can be awarded on the sole basis of an objective impairment and derivative subjective pain . . . ." *Id.* Based on this shortcoming, the Fourth Circuit determined:

> Separate and apart from his literal mobility, Oakes can qualify for benefits if he is in sufficient pain. The ALJ failed to meaningfully address this theory of qualification such that this Court may engage in judicial review. *See Cook*, 783 F.2d at 1172 ("Administrative determinations are required to be made in accordance with certain procedures which facilitate judicial review."). The ALJ likewise made no mention of the intensity or persistence of Oakes's complaints in analyzing his residual functional capacity. On this issue, "lack of explanation requires remand." *Mascio v. Colvin*, 780 F.3d 632, 640 (4th Cir. 2015).

*Id.*

Here, the ALJ did not address Plaintiff's pain symptoms specifically with regard to functionality and ability to do work-related activities on a regular and continuing basis. The ALJ determined Plaintiff had the RFC to perform sedentary work "based upon the examination and diagnostic findings of record." Tr. 22. While the ALJ's RFC assessment includes postural limitations to "further avoid exacerbation of his symptoms" these limitations do not account for sitting for prolonged periods. *Id.* Because the ALJ did not reconcile this evidence and did not discuss these issues specifically, the court finds the ALJ failed to consider Plaintiff's subjective complaints adequately and his RFC assessment does not address Plaintiff's ability to perform relevant functions in light of his subjective complaints. *Mascio*, 780 F.3d at 636 (holding that "[r]emand may be appropriate ... where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review.")(internal citation omitted). Accordingly, remand is necessary.

III.    Conclusion

The court's function is not to substitute its own judgment for that of the ALJ, but to determine whether the ALJ's decision is supported as a matter of fact and law. Based on the foregoing, the court cannot determine if the Commissioner's decision is supported by substantial evidence. The court hereby reverses the decision of the Commissioner pursuant to Sentence Four

of 42 U.S.C. § 405(g) and remands the matter to the Commissioner for further proceedings consistent with this order.

IT IS SO ORDERED.

June 20, 2023                                    Kaymani D. West
Florence, South Carolina                        United States Magistrate Judge